

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SIMOR MOSKOWITZ, *Plaintiff and Counter-Defendant,*<br><br>v.<br><br>JACOBSON HOLMAN, PLLC, *Defendant and Counter-Plaintiff,*<br><br>v.<br><br>MARSHA GENTNER, *et al.*, *Third Party Defendants.* | Civil Action No. 1:15-cv-336 |

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff's Motion to Dismiss or Sever the Permissive Counterclaims against third party defendants. Dkt. No. 12. Defendant has also filed a motion, requesting that the Court abstain from exercising jurisdiction in the case in favor of a parallel action in D.C. Superior Court. Dkt. No. 18. The motions have been fully briefed by the parties and on July 10, 2015, the Court heard oral argument. For the reasons stated in open court, and those set forth below, the Court hereby denies Defendant's Motion to Abstain and grants Plaintiff's Motion to Dismiss and Sever the Permissive Counterclaims.

I.  **Background**

Because this matter is before the Court on a motion to dismiss, the following factual allegations have been drawn from the Complaint—as well as the Counterclaim—and are

1

accepted as true. This controversy arises out of an employment dispute between Plaintiff Simor Moskowitz, an attorney licensed in the District of Columbia, and his former law firm Defendant Jacobson Holman, PLLC ("the Firm"). The Firm, located during the relevant period in Washington, DC, engages in the practice of intellectual property law and regularly represents clients before the United States Patent and Trademark Office located within the Eastern District of Virginia. Other equity members of the Firm included Harvey Jacobson, John Holman, Marsha Gentner, Allen Mesler, Jonathan Scherer, and George Lewis. For purposes of these motions, it should be noted that Moskowitz is a resident of Maryland, Gentner is a resident of the District of Columbia, and Scherer, Jacobson, and Holman are residents of Virginia.

On March 20, 2013, Jacobson and Holman sent a memorandum to the other equity members of the Firm "in which they (a) proposed to create a new law firm and dissolve defendant Jacobson Holman; (b) asked that any equity member ... who wanted to join the new firm advise them within thirty days; and (c) stated that they assumed any equity member who did not commit to join the new firm within thirty days would leave defendant Jacobson Holman." Compl. ¶ 6. By July 31, 2013, all equity members except Jacobson and Holman gave their notices and ultimately withdrew from the Firm.[1]

Moskowitz's claims involve the application of the following Firm documents: (1) the 1989 Partnership Agreement; (2) the 1996 Operating Agreement; (2) the 1997 Amendment to the Operating Agreement; and (4) the annual financial statements. Under the Partnership Agreement, the Firm must pay a withdrawing partner his or her equity interest, which is equal to that partner's accrual basis account. In calculating the payout, the Firm is entitled to assign to that partner any accounts receivable that are attributable to the clients of that partner, thereby reducing the Firm's payout obligation. The Operating Agreement in turn provides that the

---

[1] One equity member, Slobasky, withdrew as partner but remains as "of counsel" to the Firm.

2

amount in a withdrawing partner's accrual basis account shall be the amount set forth in the last annual or monthly financial statement "with adjustments made for events occurring in the period between the closing date of such last financial statement and the withdrawal date." *Id.* ¶ 15. Moskowitz alleges that the last financial statement applicable to his withdrawal was the December 31, 2012 ("12/31/12") annual financial statement. He further alleges that no events occurred during the intervening period leading to his withdrawal from the Firm. He also alleges that the Amendment to the Operating Agreement, which assesses a financial penalty on withdrawing partners who take the Firm's clients with them, is unenforceable.

On June 28, 2013, Moskowitz gave the Firm notice of his withdrawal. According to the 12/31/12 annual financial statement, his accrual basis account—and thus his payout—was set at $300,233. The Firm has refused to pay Moskowitz this amount. The Firm also assigned him $12,231.37 worth of client accounts receivable, which it used to reduce its payout obligation to him. Moskowitz denies that these were proper accounts of any clients of his, and therefore alleges that the assignment breached the Firm's implied duty of good faith and fair dealing.

Based on the foregoing events, on March 17, 2015, Moskowitz filed suit in this Court, alleging two counts for breach of contract. On May 4, 2015, the Firm filed its Answer to the Complaint along with a six count Counterclaim. Pertinent here, the Firm alleges that its accountant revised the 12/31/12 annual financial statement to reflect bonuses and allowances that had not been previously disclosed. This "restated" 12/31/12 annual financial statement accordingly adjusted the accrual basis accounts for the equity members of the Firm. When five of the eight equity members withdrew, the Firm had its accountant prepare another financial statement to account for the seven month period ending on July 31, 2013. This statement

reduced the accrual basis accounts of all eight equity members via a "write-off of uncollectable accounts receivable of the Firm in the amount of $550,514." Counterclaim ¶ 20.

Counterclaim Count I seeks a judgment against Moskowitz and all third party defendants declaring that "(a) the adjustments made in the Accountant's Restated 12/31/12 JH Financial Statements and in the subsequent Accountant's 7/31/12 Financial Statements are correct and binding upon all equity members of Jacobson Holman as of July 31, 2013; (b) as a consequence thereof, the former equity partners (except Moskowitz) have negative capital accounts; and (c) Jacobson Holman is entitled to treat their negative capital as accounts receivables of the Firm and to seek collection of those receivables." *Id.* ¶ 26. Counterclaim Count II seeks $5,788.80 from Moskowitz, which it alleges is the amount of its overpayment of his equity interest when he withdrew from the firm as well as his overdrawn business expense accounts. Counterclaim Counts III through VI similarly seek the amount of accounts receivable not previously credited and overdrawn business expense accounts from the other equity members who departed the Firm. These members have been named as third party defendants.

Of particular relevance to the instant motions, Gentner sued the Firm in D.C. Superior Court two days after Moskowitz filed the instant action in this Court. They are represented by joint counsel. In each case, the Firm has filed nearly identical counterclaims that join the five recently departed equity members.

## II. Analysis

Moskowitz has filed the instant motion to dismiss the counterclaims against third party defendants Gentner and Scherer for lack of subject matter jurisdiction. He has also moved to sever the counterclaims against the remaining third party defendants. The Firm has responded

4

with its own motion, requesting that the Court abstain from exercising jurisdiction over the case in favor of a parallel action in D.C. Superior Court. The motions will be addressed in turn.

### A. Motion to Dismiss Counterclaims Against Gentner and Scherer

The Firm has filed two counterclaims against third party defendants Gentner and Scherer, the first seeking the declaratory judgment described above and the second seeking payment of accounts receivable, overdrawn business expense accounts, and other monies owed. Moskowitz asserts that no subject matter jurisdiction exists over these counterclaims. Because the Court has neither federal question nor diversity jurisdiction over the counterclaims against Gentner and Scherer,[2] the supplemental jurisdiction statute, 28 U.S.C. § 1367, provides the only possible basis for subject matter jurisdiction.

Supplemental jurisdiction exists over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). Compulsory counterclaims are thus within the supplemental jurisdiction of the court. *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988) (holding that a compulsory counterclaim is "within the ancillary jurisdiction of the court to entertain and no independent basis of federal jurisdiction is required"); *see also Williams v. Long*, 558 F. Supp. 2d 601, 603 (D. Md. 2008) (observing that the compulsory counterclaim standard is "equivalent" to the supplemental jurisdiction standard). Conversely, a permissive counterclaim that lacks an independent jurisdictional basis is not within the jurisdiction of the court. *Painter*, 863 F.2d at 331; *Sue & Sam Mfg. Co. v. B–L–S Constr. Co.*, 538 F.2d 1048, 1051 (4th Cir. 1976).

---

[2] No diversity jurisdiction exists over the individual counterclaim against Gentner because the amount in controversy does not exceed $75,000. *See* Counterclaim ¶ 40. Likewise, the individual counterclaim against Scherer does not fall under the diversity jurisdiction statute because he and the remaining members of the Firm, Jacobson and Holman, are citizens of Virginia. Counterclaim ¶¶ 1, 5.

5

Accordingly, the Court will have jurisdiction over the counterclaims in this case if they are found to be compulsory.

A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," while a permissive counterclaim does not. Fed. R. Civ. P. 13(a), (b). To aid the determination of whether a counterclaim is compulsory, the Fourth Circuit has outlined four inquiries:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata[3] bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?

*Painter*, 863 F.2d at 331 (citing *Sue & Sam Mfg.*, 538 F.2d at 1051–53). *Painter* explained that a court need not answer all of these questions in the affirmative for the counterclaim to be compulsory. Rather, the tests "are less a litmus, more a guideline." *Id.*

Here, Moskowitz's complaint alleges two counts for breach of contract against the Firm: the first for refusing to pay him the $300,233 contained within his accrual basis account according to the Firm's 12/31/12 Annual Financial Statement, and the second for assigning to him $12,231 of uncollectible accounts receivable to reduce the Firm's payout obligation to him. The Firm's counterclaims against Gentner and Scherer raise two causes of action against each, one for a declaratory judgment and another for recovery of money owed to the Firm.

Moskowitz argues that while the declaratory judgment counterclaim against *him* is obviously compulsory, it is not compulsory as against Scherer and Gentner and therefore subject

---

[3] The Fourth Circuit has observed that collateral estoppel, or issue preclusion, may also be relevant to this second inquiry. *See Painter*, 863 F.2d at 332 (affirming district court's finding that issue preclusion could prove to be a bar); *Sue & Sam Mfg. Co.*, 538 F.2d at 1052 (holding that a judgment on issue of third-party plaintiff's negligence "would have barred a subsequent suit ... on that issue, if not on the grounds of *res judicata*, then on the grounds of estoppel by judgment, or collateral estoppel, or related doctrines, however called").

matter jurisdiction is lacking. Indeed, the Firm essentially conceded the point by relegating its entire argument on the issue to a footnote in which it states that the Court "*may* have supplemental jurisdiction over the claims against [Scherer and Gentner] . . . ." Def.'s Opp'n 9 n.5 (emphasis added). When pressed during oral argument, defense counsel stated that while "there is an argument" that supplemental jurisdiction exists over the counterclaims against Gentner and Scherer, "I don't see us having jurisdiction here." Accordingly, the Court finds that there is no supplemental jurisdiction over the counterclaims against Scherer and Gentner and they will therefore be dismissed.

### B.  *Motion to Sever the Remaining Counterclaims*

Moskowitz has also moved to sever the claims against all counterclaim defendants[4] not dismissed for lack of subject matter jurisdiction. This Court has previously held that although "[m]isjoinder is not a ground for dismissal, ... the court may sever a defendant it finds to be improperly joined." *Malibu Media, LLC v. John Does 1-23*, 878 F. Supp. 2d 628, 630 (E.D. Va. 2012) (citing Fed. R. Civ. P. 21). In determining whether joinder was proper, courts routinely apply the "same transaction or occurrence" test of Rule 20(a). *E.g.*, *Advamtel, LLC v. AT & T Corp.*, 105 F. Supp. 2d 507, 513–14 (E.D. Va. 2000). The Rule provides as follows:

> Persons ... may be joined in one action as defendants if ... any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and ... any question of law or fact common to all defendants will arise in the action ... Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded . . . ."

Fed. R. Civ. P. 20(a). The "same transaction or occurrence" test thus allows "all reasonably related claims for relief by or against different parties to be tried in a single proceeding.

---

[4] He does not, however, seek severance of the counterclaim against himself, as he concedes that it is compulsory. *See* Pl.'s Mot. 12.

Absolute identity of all events is unnecessary." *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (citation and internal quotation marks omitted). "Further, the rule should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Id.* Although the Rule permits "the broadest possible scope of action consistent with fairness to the parties," a court may "deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966); *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007). *But see Meth v. Natus Med. Inc.*, No. 3:14-cv-173, 2014 WL 3544989, at *3 (E.D. Va. July 17, 2014) (observing that Rule 20 "is liberally construed by the courts").

Moskowitz suggests that Rule 20 has an additional requirement—"some allegation of concerted action between defendants[.]" Pl.'s Mot. 14 (quoting *Spaeth v. Mich. State Univ. College of Law*, 845 F. Supp. 2d 48, 53 (D.D.C. 2012)). A closer examination of the cases he cites, however, reveals that they instead stand for the proposition that, if the *only* relatedness of the claims against the defendants is that each engaged in similar behavior, joinder is improper unless the defendants conspired or engaged in concerted action. *Compare Spaeth*, 845 F. Supp. 2d at 53–54 (denying joinder where plaintiff sued six law schools that had each denied him a tenure track position), *with Tele-Media Co. of W. Conn. v. Antidormi*, 179 F.R.D. 75, 76 (D. Conn. 1998) (holding joinder of 104 defendants was improper where only commonality between them was that "each defendant's alleged violation came to light as a result of an electronic countermeasure" instituted by the plaintiff).

Even when liberally construed, however, it is apparent that the counterclaims against the other departing members of the Firm are not "reasonably related" to Moskowitz's claims.

8

Although the counterclaims against Moskowitz and the other departing partners may have facial similarity, in reality they involve the assignment of different accounts receivable based on each partner's different clients. Furthermore, the amount of the Firm's payout to the departing partners of their equity interest was calculated in light of different actions taken by each. The Firm also alleges that certain departing partners, including Moskowitz, were overdrawn on their business expense accounts while others were not. As a result, the Court finds that the counterclaims do not arise out of the "same series of transactions and occurrences" as Moskowitz's claims. Even if they did, the Court also finds that permitting joinder of these counterclaims would not "foster the objectives of [Rule 20]," and would result in prejudice to Moskowitz as well as expense and delay. *Aleman*, 485 F.3d at 218 n.5. For these reasons, Moskowitz's motion to sever the claims against the additional counterclaim defendants will be granted.[5]

### C. The Firm's Motion to Abstain

Finally, the Firm has moved this Court to abstain from exercising jurisdiction in favor of a parallel action pending in D.C. Superior Court. Under the *Colorado River* doctrine, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). The Supreme Court has emphasized the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* at 817. Accordingly, the court's "task ... is not to find some substantial reason for the *exercise* of federal jurisdiction," but rather "to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the

---

[5] It should be noted that the Firm has not yet served any of the additional counterclaim defendants. At this point, it appears unlikely that it will do so in the future, given the Court's rulings in this Opinion and the fact that the counterclaim defendants have been served in the D.C. action. Should the Firm eventually choose to serve them with the claims before this Court, those claims will proceed in a separate action.

*surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25–26 (1983) (emphasis in original) (internal quotation marks omitted).

When a litigant urges abstention under the doctrine, the court should first determine whether the state and federal proceedings are parallel. *Colorado River*, 424 U.S. at 813. If they are in fact parallel, the court must then consider whether "exceptional circumstances" warranting abstention exist. *Id.* To aid this second inquiry, the Supreme Court has identified several relevant factors, including: "(1) jurisdiction over the property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal law is implicated; and (6) whether the state court proceedings are adequate to protect the parties' rights." *Gannett Co. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002) (citing *Colorado River*, 424 U.S. at 818; *Moses H. Cone*, 460 U.S. at 23, 26). In *Moses H. Cone*, the Supreme Court found "considerable merit" in an additional factor—"the vexatious or reactive nature of either the federal or the state litigation . . . ." 460 U.S. at 17 n.20. This factor has at times been incorporated into the Fourth Circuit's abstention analysis. *Compare McLaughlin v. United Va. Bank*, 955 F.2d 930, 935 (4th Cir. 1992) (incorporating factor), *with Gannett*, 286 F.3d at 741 (omitting it from the list of relevant factors but upholding district court's finding on it). Importantly, these factors are not to serve as a "mechanical checklist." *Moses H. Cone*, 460 U.S. at 16. Rather, they must be "carefully balanc[ed] ... as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* With these principles in mind, the Court turns to the first inquiry.

    *i.   Parallel State and Federal Proceedings*

The Fourth Circuit has instructed that "[s]uits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Gannett*, 286 F.3d at 742 (quoting

*New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991)). Additionally, if the "sought-after relief ... [is] not substantially the same, the actions are not parallel proceedings." *Id.* at 743; *see also New Beckley*, 946 F.2d at 1074 ("A difference in remedies is a factor counseling denial of a motion to abstain."); *Al–Abood v. El–Shamari*, 217 F.3d 225, 232–33 (4th Cir. 2000) (holding that claims were not parallel for *Colorado River* purposes where they were predicated on common underlying facts but involved separate issues).

Here, Moskowitz and the Firm are parties to both the D.C. action and this federal action. Moskowitz disputes this fact, claiming that the Court should disregard the current procedural posture of the cases—namely, the Firm's joinder of Gentner to this action and of Moskowitz to the D.C. action—and determine whether the cases were parallel as "initially filed." Pl.'s Opp'n 5. Significantly, although Gentner and the other departing partners were named in the counterclaim pleading in this case over two months ago, they have not yet been served. Thus, as they currently stand, the cases do not involve "substantially the same parties litigating ... in different forums." *Gannett*, 286 F.3d at 742. The Court thus finds that the suits are not parallel.

Even assuming, *arguendo*, that the proceedings are parallel, the Court also finds that there are no "exceptional circumstances" warranting abstention. In addressing the factors listed above, the Court again notes that the balance of factors must be "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16.

   ii.  *Jurisdiction over Property*

As both sides concede, there is no real or personal property, or res, at issue. This factor therefore does not weigh in favor of abstention.

### iii. *Inconvenience of the Federal Forum*

The Firm maintains that although "[t]his factor does not bear heavily either way," the fact that the claims in both cases arose in the District of Columbia "urges abstention." Def.'s Mot. Abstain 7–8. Of course, however, this Court is nowhere close to being remote from the District of Columbia, where the Firm and many likely witnesses are located. As a result, the federal forum cannot rationally be called inconvenient when compared to the state forum in the District. This factor thus does not support abstention.

### iv. *Desirability of Avoiding Piecemeal Litigation*

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Gannett*, 286 F.3d at 744 (citation and internal quotation marks omitted). Although the Supreme Court has deemed the possibility of piecemeal litigation to be "[b]y far the most important factor" in the abstention analysis, "[t]he threat of inconsistent results and the judicial inefficiency inherent in parallel breach of contract litigation ... are not enough to warrant abstention." *Id.*; *Moses H. Cone*, 460 U.S. at 16. The Fourth Circuit's decision in *Gannett* is highly instructive. In that case, Gannett filed a breach of contract diversity action against Clark in this Court. The next day, Clark filed a breach of contract action against Gannett in the Fairfax County Circuit Court. The Fourth Circuit held that the procedural posture of the cases was insufficient to create a danger of piecemeal litigation:

> *The threat of different outcomes in these breach of contract actions, however, is not the type of inconsistency against which abstention is designed to protect,* in that Gannett and Clark are both parties to the Federal and State Contract Actions; thus, *res judicata* effect will be given to whichever judgment is rendered *first*. Insofar as abstention does not lessen the threat of inefficiency or inconsistent results beyond those inherent in the duplicative nature of these proceedings and there is nothing in the nature of breach of contract actions that renders the fact of duplicative proceedings exceptionally problematic, the district

12

> court abused its discretion by determining that the possibility of piecemeal litigation weighs in favor of abstention.

*Gannett*, 286 F.3d at 746 (emphasis added) (citation omitted).

The circumstances of this litigation are plainly analogous to those in *Gannett*. There are two breach of contract actions, one in state and one in federal court. If this case resolves first, then the D.C. Superior Court will almost certainly give *res judicata* effect to the claims between Moskowitz and the Firm. The result of both cases will therefore be consistent. Likewise, an earlier decision in this Court with respect to disputes between the Firm and the other departing members, including Gentner, will likely entail an application of the doctrine of collateral estoppel in state court. Accordingly, pursuant to *Garrett*, this case presents no danger of piecemeal litigation. Thus, this factor does not weigh in favor of abstention.

### v. The Order in Which Jurisdiction Was Obtained

The Supreme Court has emphasized that this factor should "be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. Although the action in this Court was filed first, it was a mere two days prior to Gentner's filing of the state court action. Moreover, this Court is indeed further along than the D.C. action, having issued a scheduling order for the parties to commence discovery. However, the lack of progress in the D.C. action is due to defense counsel's consent to plaintiff's counsel's request to continue the initial conference date, which is when the Superior Court issues scheduling orders. Accordingly, the Court finds this factor neutral.

*vi.*   *Whether Federal Law Is Implicated*

The parties agree that this factor is neutral, as no federal question is presented by this breach of contract action governed by District of Columbia law.

*vii.*   *Whether the State Court Proceedings Are Adequate to Protect the Parties' Rights*

Moskowitz does not address this factor, but the result is clear. The D.C. action is undeniably adequate to protect the parties' rights created by *D.C.* law. It should be noted that this factor will only support abstention in "rare circumstances," as it was "designed to justify retention of jurisdiction where an important federal right is implicated and state proceedings may be inadequate to protect the federal right, or where retention of jurisdiction would create 'needless friction' with important state policies." *Moses H. Cone*, 460 U.S. at 26; *Gannett*, 286 F.3d at 746 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 717–18 (1996)) (citation omitted). Accordingly, this factor does not support abstention.

*viii.*   *The Vexatious or Reactive Nature of the Suits*

This Court has twice before held that a stay or dismissal was justified under the *Colorado River* doctrine "as a means to deter vexatious use of the courts." *Holland v. Hay*, 840 F. Supp. 1091, 1102 (E.D. Va. 1994) (holding "reactive nature of the federal suit" counseled in favor of abstention where plaintiffs had "filed this action only after their attempts to remove the case to federal court and avoid the Georgia state court's jurisdiction failed"); *accord Baseline Sports, Inc. v. Third Base Sports*, 341 F. Supp. 2d 605, 612 (E.D. Va. 2004) (holding that defendant's filing of federal lawsuit when it could have easily removed to federal court in the state action was vexatious and weighed "strongly in favor of abstention").

The Court does not find that the filings were vexatious. During oral argument, Moskowitz and Gentner's joint counsel represented to the Court that each had their own reasons

14

for suing in separate forums. As an attorney who routinely practiced in this Court, Moskowitz was undoubtedly aware of the reputation of the "Rocket Docket" for speedy resolution of civil matters and thus chose to sue here in an attempt to collect over $300,000 in alleged damages sooner rather than later. Meanwhile, Gentner lives and works in the District of Columbia and understandably chose to sue in her home forum. Accepting these representations, this factor does not support abstention.

In sum, none of the above factors supports a finding that "exceptional circumstances" warrant abstention. In light of that fact, and mindful of the Supreme Court's admonition that the balance of factors should be "heavily weighted in favor of the exercise of jurisdiction," the Court alternatively finds that no "exceptional circumstances" exist to justify surrendering jurisdiction in this case. *Moses H. Cone*, 460 U.S. at 16. The Firm's motion to abstain will therefore be denied.

### IV. Conclusion

For the foregoing reasons, the Court will grant the motion to dismiss the claims against Gentner and Scherer for lack of subject matter jurisdiction, sever the claims against the remaining counterclaim defendants, and deny the motion to abstain.

An appropriate Order shall issue.

July 13, 2015
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge