NOV − 6 2015

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| SIMOR L. MOSKOWITZ, | |
| Plaintiff, | |
| -v- | Civil Action No. 1:15-cv-336 |
| JACOBSON HOLMAN, PLLC, | Hon. Liam O'Grady |
| Defendant. | |

### MEMORANDUM OPINION

Simor Moskowitz sued his former law firm, Jacobson Holman, PLLC (the "Firm"),
alleging breach of contract and seeking compensation allegedly due to him following his
withdrawal from the Firm. The Firm filed a counterclaim, relying in part on a provision in its
operating agreement that states that an equity partner who withdraws and takes clients is subject
to a fifty-percent forfeiture of his or her payout. Moskowitz defended the counterclaim on the
ground that the forfeiture provision violates the D.C. Rules of Professional Conduct and is
therefore void and unenforceable. The Firm now moves for judgment on the pleadings on the
sufficiency of this defense. The Court heard argument on October 2, 2015, and issued an Order
the same day denying the motion. This memorandum opinion serves to explain the reasons
underlying the Court's decision.

## I. Background

The Court has previously set out the specifics of the allegations in the complaint and the
counterclaim and does not repeat them here. *See Moskowitz v. Jacobson Holman, PLLC*, No.

1

1:15-cv-336, 2015 WL 4255100, at *1–2 (E.D. Va. July 13, 2015). A brief overview of the

intervening developments in the case and the facts central to this motion is necessary, however.

The Firm's partnership agreement provides that a withdrawing equity partner is to be paid

the amount in his Accrual Basis Account ("ABA"). But a withdrawing partner who takes clients

with him is subject to a forfeiture provision contained in the Firm's operating agreement:

> In the event an Equity Member withdraws from the Company at any time after the
> date of this Amendment and takes client(s) of the Company, and the Company
> does not dissolve within three months of the Equity Member withdrawal date,
> then the withdrawing Equity Member will forfeit and give up to the Company
> fifty percent (50%) of his/her Accrual Basis Account adjusted as of the date of
> withdrawal (hereinafter the "Forfeited Amount"); . . . .

Countercl. at 10. In 2013, Moskowitz withdrew from the Firm and took clients with him. In

response, the Firm invoked the forfeiture provision and reduced Moskowitz's ABA payout by

fifty percent.

In his answer to the Firm's counterclaim, Moskowitz asserted as an affirmative defense

that "[t]he forfeiture clause of the defendant's Operating Agreement violates the District of

Columbia Rules of Professional Conduct and is void and unenforceable based on the facts of this

case."[1] Pl.'s Am. Answer to Am. Countercl. at 6. The Firm filed a motion for judgment on the

pleadings pursuant to Federal Rule of Civil Procedure 12(c) challenging the legal sufficiency of

this defense. Specifically, the Firm asks the Court to find as a matter of law that a violation of a

---

[1] This is the defense as it reads after Moskowitz was granted leave to amend his answer.
His original answer read: "The forfeiture clause of the defendant's Operating Agreement is void
and unenforceable because it violates the District of Columbia Rules of Professional Conduct."
Pl.'s Answer to Countercl. at 6. The Firm's motion for judgment on the pleadings was filed
before the amendment. Thus, at the time Moskowitz filed his brief in opposition, the language of
the defense had changed. The amendment has no effect on the Court's analysis. Despite the
altered language, the issue on which the parties disagree remains the same: whether a violation of
a D.C. Rule of Professional Conduct can render the forfeiture provision unenforceable or
whether there must be some additional analysis of the provision's reasonableness. *See* Def.'s
Reply at 2 (stating that the "same issue" is presented to the Court following amendment).

D.C. Rule of Professional Conduct, without more, cannot render a contract provision unenforceable.

## II.  Standard of Review

Before reaching the merits, the Court must address a threshold point of disagreement between the parties.  Moskowitz argues that a Rule 12(c) motion for judgment on the pleadings was not the proper vehicle for the Firm's challenge because Rule 12(c) should only be the basis of a motion when it may result in a final judgment.[2] A Rule 12(f) motion to strike, in his view, is proper in a scenario like this where a single affirmative defense is at issue.[3] The Firm disagrees and argues that the modern trend among courts is to recognize motions for partial judgment on the pleadings.

Moskowitz is correct that a motion for judgment on the pleadings generally has the potential to result in a final judgment on the merits, whereas a motion to strike "serves as a pruning device to eliminate objectionable matter from an opponent's pleadings and . . . is not directed at gaining a final judgment."  5C Wright & Miller, Federal Practice and Procedure § 1369 (3d ed. updated Apr. 2015).  Accordingly, "[i]f a plaintiff seeks to dispute the legal sufficiency of fewer than all of the defenses raised in the defendant's pleading," it follows that "he should proceed under Rule 12(f) rather than under Rule 12(c) because the latter leads to an entry of a judgment."  *Id.*

The Firm is also correct, however, that there is a trend towards "recogniz[ing] the notion of a partial judgment on the pleadings."  *Id.*  Courts have noted that "[w]hile Rule(c) does not

---

[2]  Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).

[3]  Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

expressly provide for partial judgment on the pleadings, neither does it bar such a procedure."

*New York v. Micron Tech., Inc.*, No. C 06-6436-PJH, 2009 WL 29883, at *3 (N.D. Cal. Jan. 5,

2009); *see also Norton v. Assisted Living Concepts, Inc.*, 786 F. Supp. 2d 1173, 1182 n.2 (E.D.

Tex. 2011); *Aaron v. Martin*, No. 4:11CV1661, 2013 WL 466242, at *2 (E.D. Mo. Feb. 7, 2013)

("The Federal Rules of Civil Procedure provide two ways for a party to challenge the sufficiency

of an affirmative defense: a motion for judgment on the pleadings under Rule 12(c), or a motion

to strike under Rule 12(f)."); *Savage v. Council on Am.-Islamic Relations, Inc.*, No. C 07-6076-

SI, 2008 WL 2951281, at *2 (N.D. Cal. July 25, 2008) ("[I]t is the practice of many judges to

permit 'partial' judgment on the pleadings (e.g. on the first claim of relief, or the third affirmative

defense.").

It is not necessary for the Court to weigh in on the procedural evolution of Rule 12(c)

because whether the Court were to construe the Firm's motion as a Rule 12(f) motion or continue

to treat it as a Rule 12(c) motion, the result would be the same.   Accordingly, the Court analyzes

the Firm's challenge to Moskowitz's affirmative defense as a motion for partial judgment on the

pleadings.   In doing so, the Court applies the same standard as it applies to Rule 12(b)(6)

motions, accepting all well-pleaded allegations as true and drawing all reasonable factual

inferences in the non-movant's favor. *See Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014).

The motion should only be granted if it appears that the non-moving party cannot prove any set

of facts in support of his claim and the claim may be resolved as a matter of law. *See Priority*

*Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 139 (4th Cir. 2014).

### III. Analysis

The Firm argues that Moskowitz's affirmative defense is insufficient as a matter of law

because a violation of a D.C. Rule of Professional Conduct is never enough, standing alone, to

4

render a contract provision unenforceable under D.C. law. Moskowitz argues in response that law firm agreements that violate D.C. Rule of Professional Conduct 5.6 are void as contrary to public policy and unenforceable. The parties agree that D.C. law governs this suit and that the relevant rule of professional conduct is Rule 5.6. Rule 5.6, titled "Restrictions on Right to Practice," provides, in pertinent part:

> A lawyer shall not participate in offering or making:
>
> (a) A partnership, shareholders, operating, employment or other similar type of agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement . . . .

D.C. R. Prof'l Conduct 5.6(a) (2007).[4]

There is only one D.C. Court of Appeals decision that substantively addresses Rule 5.6, *Neuman v. Akman*, 715 A.2d 127 (D.C. 1998). The issue in *Neuman* was whether a challenged provision fell within rule's exception for "benefits upon retirement." Ultimately, the court held that it did. Thus, the court never reached the two issues raised in this case: (1) "whether or not the partnership agreement provisions withholding the benefit actually constitute[d] a restriction on the right to practice law within the meaning of the rule," *id.* at 132 n.8; and (2) if the provisions did amount to such a restriction, whether the provisions would be unenforceable.[5] With respect to the former issue, the court did note, without further comment, that "courts have often invalidated various types of financial disincentives as indirect restraints on the practice of

---

[4] Rule 5.6 was "adapted from model disciplinary codes drafted by the American Bar Association." *Neuman v. Akman*, 715 A.2d 127, 130 n.5 (D.C. 1998).

[5] Moskowitz argues that the *Neuman* court accepted the premise that a provision that violates Rule 5.6 is unenforceable. Pl.'s Br. in Opp'n at 8. The Court disagrees. The *Neuman* court explicitly stated that it was not reaching the issue of whether the provisions constituted a restriction on the right to practice. Accordingly, there was no reason for the court to consider what the significance would be, if any, of a finding that the provision did constitute such a restriction.

law, finding them sufficiently opprobrious to be barred by the ethical rule." *Id.*

Thus, what types of restrictions fall within Rule 5.6's prohibition of "agreement[s] that restrict[] the rights of a lawyer to practice" and relatedly, whether a provision that falls within Rule 5.6's prohibition may nonetheless be enforceable are issues of first impression in the District of Columbia. As a federal court sitting in diversity, "we have an obligation to interpret the law in accordance with the Court of Appeals of [D.C.], or where the law is unclear, as it appears that the Court of Appeals would rule." *Wells v. Liddy*, 186 F.3d 505, 527–28 (4th Cir. 1999). "To forecast a decision of the state's highest court we can consider, *inter alia*: canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest courts, well considered dicta, and the state's trial court decisions." *Id.* at 528. Notably, in *Neuman*, after acknowledging that it had "never had occasion to interpret and apply in a definitive sense any part of Rule 5.6(a)," the D.C. Court of Appeals turned to the decisions of other states interpreting their parallel rules for guidance. *See* 715 A.2d at 132 ("We turn to these authorities for guidance on the meaning of Rule 5.6(a) . . . ."); *id.* at 130 n.5 (explaining that the court had "freely consulted" sources construing the parallel state rules).

As the *Neuman* court referenced, there is a split in authority in other states regarding the scope of Rule 5.6. All courts to consider the issue agree that the rule covers provisions that explicitly restrict the right to practice, such as a provision barring an attorney from representing particular clients or practicing in a particular geographic area. But courts disagree on whether the rule also covers indirect restraints, such as a financial disincentive like the forfeiture provision at issue here. The majority view is that the rule covers indirect restraints. In the seminal case representing the majority view, the New York Court of Appeals explained:

> [W]hile the provision in question does not expressly or completely prohibit a
> withdrawing partner from engaging in the practice of law, the significant

6

monetary penalty it exacts, if the withdrawing partner practices competitively with the former firm, constitutes an impermissible restriction on the practice of law. The forfeiture-for-competition provision would functionally and realistically discourage and foreclose a withdrawing partner from serving clients who might wish to continue to be represented by the withdrawing lawyer and would thus interfere with the client's choice of counsel.

*Cohen v. Lord, Day & Lord*, 550 N.E.2d 410, 411 (N.Y. 1993).

A minority reads Rule 5.6 narrowly to cover only direct restraints—that is, "agreements that forbid a lawyer to represent certain clients or engage in practice in certain areas or at certain times." *Fearnow v. Ridenour, Swenson, Cleere & Evans, P.C.*, 138 P.3d 723, 729 (Ariz. 2006). In the seminal case representing the minority view, the Supreme Court of California reasoned that "[a]n agreement that assesses a reasonable cost against a partner who chooses to compete with his or her former partners does not restrict the practice of law. Rather, it attaches an economic consequence to a departing partner's unrestricted choice to pursue a particular kind of practice." *Howard v. Babcock*, 863 P.2d 150, 156 (Cal. 1993).

As noted above, the scope of D.C.'s Rule 5.6 is an issue of first impression. Several things would support a prediction that the D.C. Court of Appeals will join the majority view. Comment 2 to Rule 5.6 indicates that at least some indirect restraints will violate the rule. It provides that "[r]estrictions, other than those concerning retirement benefits, that *impose a substantial financial penalty* on a lawyer who competes after leaving the firm may violate paragraph (a)." D.C. R. Prof'l Conduct 5.6(a) cmt. 2 (2007) (emphasis added). Moreover, D.C. ethics opinions interpret the rule to cover indirect restraints. *See* D.C. Ethics Opinion 325 (Oct. 2004) ("It has long been clear that Rule 5.6(a) bars not only agreements that would explicitly restrict lawyers' practices but also reaches agreements that may not explicitly bar such actions but creates financial

7

disincentives to taking these actions."); *see also* D.C. Ethics Opinion 368 (Feb. 2015) (citing to the rule in *Cohen*). And at least one other district court has predicted that the D.C. Court of Appeals will join the majority rule and hold that Rule 5.6 prohibits both direct and indirect restraints on practice. *See Shainis v. Baraff, Koerner, Olender & Hochberg, P.C.*, No. 93-2253, 1994 U.S. Dist. LEXIS 21971 (D.D.C. July 18, 1994).

It is not necessary at this juncture in the litigation for this Court to predict how the D.C. Court of Appeals will interpret the scope of Rule 5.6, however, because the Firm concedes for purposes of its motion that the forfeiture provision violates the rule. *See* Def.'s Memo. in Supp. at 2 ("[A]ssuming for purposes of this Motion that [the forfeiture provision] violates Rule 5.6 of the DCRPC . . . ."); *id.* at 6 ("[W]e assume that [the forfeiture provision] would violate the DCRPC . . . ."). The Firm's sole challenge to the affirmative defense is whether that violation is enough to render the forfeiture provision unenforceable. For the reasons that follow, the Court predicts the D.C. Court of Appeals will hold that a provision in a law firm agreement that violates Rule 5.6(a) is void as contrary to public policy and unenforceable. None of the Firm's arguments persuade the Court to the contrary.

The Firm first argues that a rule of professional conduct cannot be used as the basis for civil liability. In support, the Firm points to language in the scope section of the D.C. Rules of Professional Conduct, which states: "[N]othing in the Rules or associated Comments or this Scope section is intended to confer rights on an adversary of a lawyer to enforce the Rules in a proceeding other than a disciplinary proceeding." D.C. R. Prof'l Conduct, Scope (2007). The Firm concedes, however, that "D.C. courts have given some effect to various portions of the DCRPC outside of the disciplinary context" and then lists examples—fee disputes, attorney

8

disqualifications, and fiduciary duty claims. Def.'s Memo. in Supp. at 7. And courts outside of D.C. addressing restrictive covenants in law firm agreements have relied on Rule 5.6 to determine the enforceability of those provisions. A fact recognized by the Restatement: "While the restriction is found in lawyer codes, courts have generally accepted the restrictions for purposes of assessing the availability of civil remedies, such as a request by a law firm or third party to enforce the agreement." Restatement (Third) of the Law Governing Lawyers § 13 cmt. a (2000). The Court finds that, at least in this limited context, the use of Rule 5.6 as the basis for civil liability is appropriate.

The Firm next argues that a contract provision that violates an ethical rule is not *per se* void and unenforceable in the District of Columbia. To support this conclusion, the Firm does not rely on cases that address the enforceability of a contract provision that violates a D.C. Rule of Professional Conduct. Instead, the Firm relies on a number of cases that discuss the relevance of a rule violation to an alleged breach of an attorney's fiduciary duty. In that context, D.C. courts have held that a violation of an ethical rule "does not per se 'constitute a breach of the attorney's common law fiduciary duty to the client.'" *Television Capital Corp. of Mobile v. Paxson Commc'ns Corp.*, 894 A.2d 461, 469 (D.C. 2006) (quoting *Griva v. Davison*, 637 A.2d 830, 846–47 (D.C. 1994)). The Firm asks the Court to read this language to mean that "D.C. courts . . . have expressly disavowed the notion that a violation of a disciplinary rule alone establishes liability in an action for breach." Def.'s Memo. in Supp. at 7 (emphasis omitted). From there, the Firm takes another leap and imports its new principle to breach of contract claims: "Under D.C. law, therefore, a conflict between a contract provision and an ethical rule does not itself render the provision void or unenforceable. An otherwise valid contract may be deemed unenforceable in that circumstance only if it *also* violates public policy." *Id.* at 8

(emphasis added).

The Firm's reasoning does not withstand scrutiny. First, the Firm overstates the conclusion to be drawn from the fiduciary duty cases. It is not the case that the violation of an ethical rule will never constitute a breach of fiduciary duty. The D.C. Court of Appeals has said that "a violation of the . . . Rules of Professional Conduct *can* constitute a breach of the attorney's common law fiduciary duty to the client." *Griva,* 637 A.2d at 846–47 (emphasis added). Whether it does or does not depends on the type of violation. *See Sheppard v. United States*, No. CBD-07-923, 2010 U.S. Dist. LEXIS 41377, at *9 (D. Md. Apr. 27, 2010) ("The *type of violation* appears relevant to whether a violation is a per se breach of an attorney's duty to his client." (emphasis added)). Moreover, it makes sense in the context of the breach of fiduciary duty that "certain kinds of violations of certain ethical rules may demonstrate that an attorney has breached his fiduciary duty of loyalty, while others may not." *Jacobsen v. Oliver*, 555 F. Supp. 2d 72, 88 (D.D.C. 2008). By contrast, this case implicates a specific rule of professional conduct that prohibits a specific type of contract provision and a contract provision that falls within that prohibition.

Second, other district courts applying D.C. law accept the premise that a contract provision that violates the D.C. Rules of Professional Conduct is unenforceable. For example, in *Jacobsen v. Oliver*, the plaintiff sued his former law firm over a contingency fee. The plaintiff made two arguments that are relevant here: (1) his attorneys breached the duty of loyalty and the contingency fee should be disgorged; and (2) the contract contemplating the contingency fee was contrary to public policy and unenforceable. As proof of both, the plaintiff relied on violations of the D.C. Rules of Professional Conduct. Specifically with respect to the contract claim, the plaintiff argued that the contract, including the fee provision, was unenforceable because it

10

contained two other provisions that were contrary to public policy as embodied in two D.C.

Rules of Professional Conduct.  This is what the court said:

> [Plaintiff] complains of two particular clauses in the Contract: (1) a clause requiring him to obtain defendants' consent before accepting a settlement offer, and (2) a clause requiring him to pay all fees and costs before discharging defendants. *It certainly is true that the former clause could not be enforced in light of D.C. Rule of Professional Conduct 1.2(a), while the latter could not be enforced in light of D.C. Rule of Professional Conduct 1.16(a)(3).*

*Id.* at 79 (emphasis added) (footnote and citation omitted).[6]  The court ultimately rejected the

plaintiff's argument because there was no evidence that the law firm ever attempted to enforce

the provisions and thus the contract was contrary to public policy "only in the most academic

sense." *Id.* at 80.  What is important here is that had the firm tried to enforce those provisions,

they would have been unenforceable.

Similarly, in *Hickey v. Scott*, 738 F. Supp. 2d 55 (D.D.C. 2010), the district court held a

contract provision that purported to bar a client from bringing a malpractice claim was

unenforceable.  The court reasoned that a contract provision may be unenforceable on grounds of

public policy and that "[c]ontractual provisions that violate the attorney's rules of professional

conduct undoubtedly fall into this category." *Id.* at 62.  Because D.C. Rule of Professional

Conduct 1.8 prohibits prospective agreements that limit a lawyer's malpractice liability, the court

held the provision was void and unenforceable.

Third, the Court disagrees with the Firm's contention that a provision that violates Rule

5.6 must be subjected to an additional public policy analysis before finding it void.  The Firm

cites the well-established principle that a contract provision may be unenforceable on public

policy grounds if "the interest in its enforcement is clearly outweighed by a public policy against

---

[6] Notably, the court did not find it necessary to import the standards governing the fiduciary duty claim into its discussion of the enforceability of the contract.

the enforcement of such terms." Restatement (Second) Contracts § 178 (1981). The Firm

contends that the "public policy calculus" in this case should be made by applying the same

standard applicable to other non-competes and restrictive covenants under D.C. law. Def.'s

Memo. in Supp. at 8.

This argument completely fails to consider the possibility that Rule 5.6 supplies the

relevant public policy determination. The rule reflects the view that "[a]n agreement restricting

the right of partners or associates to practice after leaving a firm not only limits their professional

autonomy but also limits the freedom of clients to choose a lawyer." D.C. R. Prof'l Conduct 5.6

cmt. 1 (2000); *see also Akman*, 715 A.2d at 130–31 (explaining in detail the policies underlying

the rule). Rule 5.6 is the result of a careful balancing of concerns for client choice and attorney

autonomy with the interest of contract enforcement. There is no need for additional balancing.

Indeed, it is because of the policy concerns reflected in Rule 5.6 that courts treat restrictive

covenants in law firm agreements differently than analogous provisions for other professions.

*See* ABA Annotated Model Rules of Professional Conduct, Rule 5.6 Annotation (8th ed.)

("Restrictive covenants involving lawyers are said to diminish the pool of legal talent available

to the public . . . and are therefore regulated much more closely than similar agreements

involving other professionals, to which courts usually apply a common-law reasonableness

test."); Asher L. Kitchings, *Non-Compete Agreements for Attorneys: Will We Continue to Be*

*Treated Differently Than Other Professions?*, 38 Am. J. Trial Advoc. 433, 433 (2014) (noting that

in the arena of non-competes, "attorneys have traditionally been treated differently"). Therefore,

if a contract provision violates Rule 5.6, it contravenes public policy. *See, e.g., Dowd & Dowd,*

*Ltd. v. Gleason*, 693 N.E.2d 358, 481 (Ill. 1998) ("[E]nforcement of the provisions at issue would

violate the important considerations of public policy that underlie the prohibition found in Rule

5.6."); *Cohen*, 550 N.E.2d at 413 ("Thus, while it is true that parties to a partnership agreement can include any agreement they wish, the terms of the agreement, including arrangements by which the mutual and important interests of a continuing law firm and a withdrawing partner can be protected, must not conflict with public policy as reflected in DR 2-108(A) [the predecessor to Rule 5.6]." (internal quotations and citation omitted)).

Ultimately, the Court is convinced that if the forfeiture provision violates Rule 5.6(a)—a premise admitted for purposes of this motion—the provision is unenforceable. The clear majority of courts find that a provision that violates Rule 5.6 is unenforceable without requiring any additional showing.[7] *See Shainis*, 1994 U.S. Dist. LEXIS 21971, at *6 ("[C]ourts have held that a clause of an employment contract that violates Rule 5.6(a) is void and unenforceable as contrary to public policy."); Restatement (Third) of the Law Governing Lawyers § 13 cmt. b (2000) ("Beyond professional discipline, such rules preclude enforcement of a provision of a firm agreement under which a departing lawyer is denied otherwise-accrued financial benefits on entering into competitive law practice . . . ."); The Lawyer's Deskbook on Professional Responsibility § 5.6-1 (updated Sept. 2015) ("Most courts will not enforce a restrictive agreement that violates [Rule 5.6]."). Even jurisdictions that interpret Rule 5.6 narrowly to cover only direct restraints on practice still hold that a provision that falls within the rule's scope is

---

[7] Given the wealth of case law from other jurisdictions addressing their counterparts to D.C. Rule of Professional Conduct 5.6, the Court does not find the two cases cited by the Firm, which address different rules, persuasive. *See LK Operating, LLC v. Collection Grp., LLC*, 331 P.3d 1147, 1165 (Wash. 2014) ("We do not purport to set out any all-encompassing rule for how violation of any RPC in connection with a contract might affect that contract's enforceability. We simply reaffirm that a contract entered in violation of former RPC 1.8(a) may not be enforced unless it can be shown that notwithstanding the violation, the resulting contract does not violate the underlying public policy of the rule."); *Post v. Bregman*, 707 A.2d 806, 819 (Md. 1998) (adopting a rule that fee-sharing agreements will not be held unenforceable based on "merely technical, incidental, or insubstantial" violations of Rule 1.5(e) or "when it would be manifestly unfair and inequitable not to enforce the agreement").

unenforceable. For example, in *Fearnow v. Ridenour, Swenson, Cleere & Evans, P.C.*, the most

recent decision joining the minority view, the court made clear that if an agreement falls within

its narrow reading of Rule 5.6, the provision is unenforceable. 138 P.3d at 729 ("Although the

rule prohibits—*and we will hold unenforceable*—agreements that forbid a lawyer to represent

certain clients or engage in practice in certain areas . . . ." (emphasis added)). That is, provisions

that fall within Rule 5.6's scope are an "exception to the general rule construing restrictive

covenants for reasonableness," and a provision that violates the rule will not be enforced, period.

There is no need for an additional analysis of the provision's reasonableness.[8]

Likewise, in *Howard v. Babcock*, the court held that California's Rule 5.6 did not prohibit

the agreement at issue—one "imposing a reasonable cost on departing partners who compete

with the law firm in a limited geographical area"—and that such an agreement "is not void on its

face as against public policy." 863 P.2d at 160. The court made clear, however, that "an absolute

ban on competition with the partnership"—a provision that *would* fall within the court's narrow

---

[8] It is only if a provision falls outside of Rule 5.6's prohibition that those courts apply the
general reasonableness analysis applicable to other restrictive covenants. *Fearnow*, 138 P.3d at
729 (stating that if a provision falls outside of Rule 5.6's scope, then "as is the case with
restrictive covenants between other professionals, [the provision] should be examined under the
reasonableness standard"). In its reply brief, the Firm cites to cases following the minority
approach and argues they support the contention that, in addition to establishing a violation of
Rule 5.6, there must be an additional reasonableness analysis. *See* Reply at 3. This ignores the
threshold issue: whether the provision at issue falls within Rule 5.6's prohibition. If it does, as
the Firm concedes for this motion, there is no additional reasonableness analysis.

The court has identified only two cases to the contrary. In *Pettingell v. Morrison,
Mahoney & Miller*, 687 N.E.2d 1237, 1240 (Mass. 1997), the court found a forfeiture provision
was unenforceable, but it held out the possibility that that a firm could justify a limitation on
payments to a withdrawing partner by putting on evidence that the restraint was reasonable. In
*Notebloom v. Gray*, 159 S.W.3d 750, 752–53 (Tex. Ct. App. 2005), the Court rejected the use of
an ethics rule and an ethics opinion as a "procedural weapon," and upheld a financial penalty
despite the fact that it violated both. *Notebloom* appears to be at odds with another Texas Court
of Appeals case, however. *See Whiteside v. Griffis & Griffis, P.C.*, 902 S.W.2d 739 (Tex. Ct.
App. 1995).

reading of the rule—"would be per se unreasonable, and inconsistent with the legitimate concerns of assuring client choice of counsel and assuring attorneys the right to practice their profession." *Id.*

In sum, the Court finds Moskowitz's third affirmative defense stands on solid ground. A finding by a jury that the Firm's forfeiture provision violates D.C. Rule of Professional Conduct 5.6 is sufficient as a matter of law to render the provision void as contrary to public policy and unenforceable.

## CONCLUSION

For the reasons stated above, the Firm's Motion for Judgment on the Pleadings (Dkt. No. 47) is **DENIED**.

November 6, 2015
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge